IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BULINKA WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19-cv-879-SMD |
| ) | |
| ANDREW SAUL, ) | |
| *Commissioner of Social Security*, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Bulinka Williams appeals an administrative decision of Defendant Commissioner of Social Security ("Commissioner"). *Compl.* (Doc. 1) p. 1, ¶¶ 1–2. The Commissioner's decision denied Williams's application for a period of disability, disability insurance benefits, and supplemental security income disability benefits. *Id.* Williams contends that the decision is not supported by substantial evidence. *Id.* at ¶ 7. For the following reasons, the Court AFFIRMS the Commissioner's decision.

**I.    BACKGROUND**

Plaintiff Bulinka Williams was born on May 29, 1981. *Admin. Ct. Tr.* at 35.[1] In 2000, Williams graduated high school and completed specialized training as a certified nurse's assistant. *Id.* at 35, 158. Between December 2008 and September 2015, Williams worked as a certified nurse's assistant. *Id.* at 158. On September 11, 2015, at the age of

---

[1] "*Admin. Ct. Tr.*" consists of a consecutively paginated record of the administrative proceedings below; the consecutive pagination spans from ECF Doc. 14-2 to ECF Doc. 14-10. For clarity, this Opinion cites to the consecutive pagination, not the ECF pagination.

thirty-four, Williams allegedly became disabled and unable to work due to vertigo, dizziness, nausea, vomiting, shortness of breath, chest pains, high blood pressure, migraines, acid reflux, depression, anxiety, panic attacks, and insomnia. *Id.* at 35, 157.

On January 13, 2017, Williams applied for a period of disability, disability insurance benefits, and supplemental security income disability benefits. *Id.* at 15. Williams's application was denied at the administrative level, at which time she requested and received a hearing before an administrative law judge ("ALJ"). *Id.* Following the hearing, the ALJ affirmed the denial of Williams's application, and the Appeals Council denied Williams's request for review. *Id.* at 2, 26. At that time, the ALJ's decision became the final decision of the Commissioner. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

## II. WILLIAMS'S MEDICAL HISTORY

Between April 2015 and November 2016, Williams sought treatment for a myriad of medical conditions from her primary physician, Dr. Yusef P. Williams. *Pl.'s Br.* (Doc. 12) pp. 2–5; *Admin. Ct. Tr.* at 26. Williams complained of dizziness, migraines, "occasional ear ringing," high blood pressure, nausea, aura type symptoms, chest pain, and shortness of breath. *Pl.'s Br.* (Doc. 12) pp. 2–3. Dr. Williams diagnosed Williams with headaches related to hypertensive urgency, nausea, fatigue, microscopic hematuria, essential hypertension, dizziness, benign positional vertigo, arterial hypertension, high blood pressure, migraines, atypical chest pain, accelerated essential hypertension panic disorder with agoraphobia, and major depressive disorder, among other conditions. *Id.* at 2–5. In November 2016, Dr. Williams noted that Williams's dizziness had improved, but

that she continued to suffer from depression and an unwillingness to leave her house. *Id.* at 4–5.

On March 2, 2017, Dr. Randall Jordan performed a psychological consultive examination of Williams. *Id.* at 5. Dr. Jordan opined in pertinent part that, in terms of vocation, Williams's "ability to carry out and remember instructions of a simple, one-step nature is not compromised." *Id.* He noted that Williams could "do multi-step tasks without some degree of supervision." *Id.* He further found that Williams's "ability to respond well to coworkers, supervision, and everyday work pressures is compromised to a mild to moderate degree due to psychiatric issues." *Id.* Dr. Jordan ultimately diagnosed Williams with "depressive disorder unspecified and panic disorder." *Id.*

On March 8, 2017, Dr. Donald Hinton reviewed the medical evidence in Williams's file. *Id.* Dr. Hinton opined in pertinent part that Williams "has the ability to understand, remember, and carry out many short and simple instructions." *Id.* He also noted that Williams "can attend and concentrate for two-hour periods," but "does not have the ability to perform detailed and complex work." *Id.* Dr. Hinton ultimately concluded that Williams "would benefit from work which does not require frequent interaction with the general public" and that her "[s]upervisors should be helpful and not threatening and supporting in their feedback." *Id.*

**III.    THE ALJ'S EVALUATION OF WILLIAMS'S CLAIM**

In the administrative proceedings below, the ALJ affirmed the denial of Williams's application for disability insurance benefits and supplemental security income. *Admin. Ct. Tr.* at 15. The Social Security Act establishes the framework for determining who is eligible

to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). The Act specifies that an ALJ must evaluate "an application for a period of disability or disability insurance benefits (or both)" pursuant to a five-step process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a).[2] A claimant bears the burden of proof through step four; the Commissioner bears the burden of proof at step five. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). In this case, the ALJ concluded that Williams is not disabled at step five. *Admin. Ct. Tr.* at 26. The Court summarizes the ALJ's findings at each step.

### A.     Step One

The ALJ began by considering Williams's work activity. *Admin. Ct. Tr.* at 17. A claimant is not disabled as that term is used in the Social Security Act if he or she is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If an ALJ finds that a claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two of the statutory framework. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). Here, the ALJ found that Williams has not engaged in substantial gainful activity since September

---

[2] The same statutory framework applies to applications for supplemental security income disability benefits brought under 20 C.F.R. § 416.920(a). *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income."). For the balance of this Opinion, all references to 20 C.F.R. § 404.1520 also refer to 20 C.F.R. § 416.920.

11, 2015—i.e., the date she allegedly became disabled. *Admin. Ct. Tr.* at 17. Accordingly, the ALJ continued to step two. *Id.*

### B. Step Two

The ALJ next considered whether Williams has a severe impairment. *Id.* at 17. A severe impairment is an impairment or combination of impairments that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). A claimant is not disabled if he or she lacks a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). An ALJ proceeds to step three upon finding that a claimant has a severe impairment. *McDaniel*, 800 F.2d at 1030. Here, the ALJ determined that Williams's hypertension, affective disorder, and anxiety disorder significantly limit Williams's physical and mental ability to do basic work activities. *Admin. Ct. Tr.* at 17. Accordingly, the ALJ found that these disorders are severe impairments. The ALJ therefore moved to step three. *Admin. Ct. Tr.* at 17.

### C. Step Three

The ALJ next determined whether one or more of Williams's impairments meets or equals a statutorily enumerated impairment. *Id.* at 18. A claimant is disabled when he or she has an impairment that "meets or equals" one of the impairments listed in 20 C.F.R. Part 404, Subpart. P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). Otherwise, an ALJ proceeds to step four. *McDaniel*, 800 F.2d at 1030. Here, the ALJ found that Williams's impairments do not meet or equal an impairment listed in 20 C.F.R. Part 404. *Admin. Ct. Tr.* at 18. The ALJ therefore continued to step four. *Id.* at 20.

### D. Step Four

The ALJ next considered whether Williams is able to perform her former occupation. *Id.* at 25. To determine whether a claimant is able to perform his or her former occupation, an ALJ must first determine the claimant's "residual functional capacity" ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). A claimant's RFC is defined as that which the claimant "is still able to do despite the limitations caused by his or her impairments" in light of "'all the relevant medical and other evidence' in the case." *Id.* (quoting 20 C.F.R. § 404.1520(e)). An ALJ uses a claimant's RFC to determine whether the claimant is able to perform his or her former occupation. *Id.* A claimant who is able to perform his or her "past relevant work" is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If an ALJ finds that a claimant is not able to perform his or her former occupation, the ALJ proceeds to the fifth and final step. *McDaniel*, 800 F.2d at 1030.

Here, the ALJ began by determining Williams's physical and mental limitations. *Admin. Ct. Tr.* at 20. With respect to Williams's physical limitations, the ALJ found that Williams's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms," but that her "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent" with the medical and other evidence in the record. *Id.* at 21. Specifically, the ALJ found that Williams had received medical treatment on only one occasion since December 2015, suggesting that Williams's "symptoms are not as persistent or as limiting as alleged." *Id.* at 23.

The ALJ further found that Williams's "medical records indicate that her symptoms improved with conservative treatment as of December 2015 . . . ." *Id.* at 25. Nevertheless,

the ALJ continued, "any residual untreated hypertension could result in headaches and vertigo," which "might be expected to cause her difficulty in sustaining any strenuous exertion . . . ." *Id.* at 23. The ALJ concluded that "light exertion with the noted environmental restrictions should accommodate any residual symptoms." *Id.*

As to Williams's mental limitations, the ALJ relied on Dr. Jordan's and Dr. Hinton's assessments, both of which the ALJ found to be "consistent with and supported by" the records of Williams's primary physician, Dr. Williams. *Id.* The ALJ found that Dr. Jordan's conclusions were "generally consistent with a preponderance of the evidence" and merited "significant weight." *Id.* The ALJ further found that the evidence supports no greater limitations than those determined by Drs. Jordan and Hinton. *Id.* at 18. After considering the record as a whole, the ALJ determined that Williams has an RFC "to perform light work"—as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b)[3]—"except she should not drive or work around heights or hazards, and she is limited to simple routine tasks and occasional interaction with supervisors and the public." *Id.* at 20 (emphasis omitted).

The ALJ next used Williams's RFC to determine whether Williams is able to perform her former occupation. *Id.* at 24. The ALJ found that "the physical and mental requirements" of Williams's former occupation—i.e., nurse assistant—"exceed the [RFC] for light, unskilled work." *Id.* Accordingly, the ALJ concluded that Williams "is unable to

---

[3] Under 20 C.F.R. §§ 404.1567(b) and 416.967(b), light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." A job is considered "light work" if it requires "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

7

perform past relevant work as actually or generally performed." *Id.* The ALJ therefore proceeded to step five. *Id.* at 25.

### E. Step Five

Finally, the ALJ determined whether Williams is able to perform any other work within the national economy. *Id.* A claimant who can adjust to other work is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). A claimant who cannot adjust to other work is disabled. *Id.* To determine whether a claimant can make an adjustment to other work, an ALJ assesses the claimant's RFC, age, education, and work experience. *Id.* An ALJ may rely on the Medical Vocational Guidelines or the testimony of a vocational expert in making this determination.[4]

Here, the ALJ relied on the testimony of a vocational expert to determine whether Williams can make an adjustment to other work. *Admin. Ct. Tr.* at 25. The vocational expert testified that, based on Williams's RFC, age, education, and work experience, Williams could work as a housekeeping cleaner, laundry article sorter, or garment folder. *Id.* Based on this testimony, the ALJ found that Williams "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* The ALJ concluded that Williams is not "disabled" for purposes of the Social Security Act. *Id.* at 26. Accordingly, the ALJ affirmed the denial of Williams's application for disability insurance benefits and supplemental security income. *Id.* at 15.

---

[4] *Phillips*, 357 F.3d at 1239–40. A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Id.* at 1240.

## IV. DISCUSSION

The Commissioner's decision below is supported by substantial evidence. A federal court must uphold a decision by the Commissioner if it is "supported by 'substantial evidence'" and "there exists no other 'good cause' to remand." *McDaniel*, 800 F.2d at 1029. Substantial evidence is more than a scintilla, but less than a preponderance; it is that which a reasonable person would accept as adequate to support a conclusion. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam). A reviewing court "must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). A court cannot decide the facts anew, make credibility determinations, or re-weigh evidence. *Moore*, 405 F.3d at 1211.

Here, Williams alleges that the Commissioner's decision below is not supported by substantial evidence. *Compl.* (Doc. 1) p. 1, ¶ 7. Williams makes three arguments in support of her position. *Pl.'s Br.* (Doc. 12) pp. 7, 10, 11. First, Williams contends that the ALJ improperly discredited the medical opinions of Drs. Jordan and Hinton in determining her RFC. *Id.* at 7. Second, Williams alleges that the ALJ improperly relied on Williams's lack of follow-up treatment to discredit her testimony about the intensity, persistence, and limiting effects of her symptoms. *Id.* at 10. Third, Williams avers that the Court should remand this case because the Commissioner failed to timely answer Williams's Complaint. *Id.* at 11. The Court addresses each argument in turn.

### A.     The ALJ did not improperly discredit the medical opinions of Drs. Jordan and Hinton in determining her RFC.

Williams first argues that the ALJ improperly discredited the medical opinions of Drs. Jordan and Hinton in determining her RFC. *Pl.'s Br.* (Doc. 12) pp. 8–10. An "ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). An ALJ, however, is not required to refer to every piece of evidence in the case, so long as the ALJ's decision shows that the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curium).

In *Shaw v. Astrue*, for instance, a claimant appealed the Commissioner's denial of her application for social security disability insurance and supplemental security income benefits. *Shaw v. Astrue*, 392 F. App'x 684, 685 (11th Cir. 2010) (per curium). There, an ALJ limited the claimant's RFC to "light exertional work, including work with simple instructions and no more than limited public contact." *Id.* at 687. On appeal, the claimant argued that the ALJ improperly discredited a physician's medical opinion that the claimant "had poor abilities to interact with supervisors or to deal with work stress when making the RFC finding." *Id.*

The Eleventh Circuit held that the ALJ did not improperly discredit the physician's medical opinion. *Id.* The court reasoned that, although the ALJ "did not specifically address the findings regarding poor functionality in dealing with supervisors or stress," the ALJ's RFC determination "was not inconsistent" with those findings. *Id.* The court added that, "even if the ALJ erred in failing to mention every finding made by [the physician], any

10

such error was harmless." *Id.* at 687 n.1 (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

Here, Williams contends that the ALJ improperly discredited Dr. Jordan's opinion that Williams's "ability to respond well to coworkers, supervision, and everyday work pressures is compromised to a mild to moderate degree due to psychiatric issues." *Pl.'s Br.* (Doc. 12) pp. 8–9 (emphasis omitted). Williams reasons that the ALJ failed to place a restriction on her ability to respond to coworkers in determining her RFC. *Id.* at 9. Williams also contends that the ALJ improperly discredited Dr. Hinton's opinion that she "has the ability to understand, remember, and carry out many short and simple instructions," but "does not have the ability to perform detailed and complex work." *Id.* Williams reasons that the ALJ only limited her to simple routine tasks, whereas Dr. Hinton limited her to short and simple, and not detailed, instructions. *Id.* Finally, Williams alleges that the ALJ improperly discredited Dr. Hinton's opinion limiting her "to helpful, not threatening, and supportive supervisors." *Id.* Williams reasons that the ALJ only limited her "to occasional interaction with supervisors," and in doing so, failed to address the type of interaction that she can have with supervisors. *Id.*

The Eleventh Circuit's decision in *Shaw* forecloses Williams's argument that the ALJ improperly discredited the opinions of Drs. Jordan and Hinton. As explained above, the ALJ determined that Williams has an RFC "to perform light work"—"except she should not drive or work around heights or hazards, and she is limited to simple routine tasks and occasional interaction with supervisors and the public." *Id.* at 20. The ALJ's failure to specifically address Williams's ability to respond to coworkers is not inconsistent

11

with the ALJ's RFC determination. Neither is the ALJ's failure to specifically address Williams's inability to perform detailed work inconsistent with the ALJ's RFC determination. Likewise, the ALJ's failure to specifically limit Williams's quality of interaction with her supervisors is not inconsistent with the ALJ's RFC determination. Accordingly, the ALJ did not improperly discredit the medical opinions of Drs. Jordan and Hinton in determining her RFC.[5]

> **B.     The ALJ's failure to consider Williams's loss of insurance and inability to continue treatment does not constitute reversable error.**

Williams next argues that the ALJ improperly considered her lack of follow-up medical treatment in determining that she is not disabled. *Pl.'s Br.* (Doc. 12) p. 10. Williams reasons that the ALJ failed to consider her proffered explanation that her lack of follow-up treatment was due to her loss of insurance. *Id.* at 11. An ALJ may find that a claimant's alleged symptoms are inconsistent with the overall evidence of record "if the frequency or extent of the treatment sought by [the claimant] is not comparable with the degree of the [complainant's] subjective complaints . . . ." SOC. SEC. REGUL. 96–7p. Before making such a finding, an ALJ must consider any good-cause explanation that a claimant has for not seeking "treatment consistent with the degree of his or her complaints." *Id.*

Still, the Eleventh Circuit has made clear that an ALJ's failure to consider a claimant's good cause explanation for not seeking medical treatment does not constitute

---

[5] Even assuming the ALJ erred in not specifically addressing these medical opinions of Drs. Jordan and Hinton, the Court finds that any such error is harmless.

12

reversable error if "the ALJ's determination is also based on other factors, such as RFC, age, educational background, work experience, or ability to work despite the alleged disability . . . ." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1268 (11th Cir. 2015) (per curium); *see also Beegle v. Soc. Sec. Admin., Com'r*, 482 F. App'x 483, 487 (11th Cir. 2012) (per curium); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (per curium). Instead, an ALJ's failure to consider a claimant's good cause explanation for not seeking medical treatment constitutes reversable error only when the ALJ "primarily if not exclusively" relies on such failure in determining whether the claimant is disabled. *Ellison*, 355 F.3d at 1275.

Here, the ALJ found that Williams had received medical treatment on only one occasion since December 2015, suggesting that Williams's "symptoms are not as persistent or as limiting as alleged." *Admin. Ct. Tr.* at 23. In doing so, the ALJ failed to consider Williams's proffered explanation that her lack of follow-up medical treatment was due to her loss of insurance. The ALJ's determination, however, was not primarily or exclusively based on Williams's failure to pursue follow-up treatment. *Id.* Rather, the ALJ's determination was based on Williams's age, education, work experience, and RFC. *Id.* Accordingly, the ALJ's failure to consider Williams's loss of insurance and inability to continue treatment does not constitute reversable error.

    **C.**    **Williams is not entitled to default judgment against the Commissioner.**

Finally, Williams argues that the Court should reverse the Commissioner's decision and remand this case because the Commissioner answered Williams's Complaint twelve days late. *Pl.'s Br.* (Doc. 12) p. 11. Under Federal Rule of Civil Procedure 55, a default

judgment "against the United States, its officers, or its agencies" is available "only if the claimant establishes a claim or right to relief" based on the evidence. FED. R. CIV. P. 55. This means that a claimant is entitled to a default judgment only when he or she shows that the Commissioner's decision is not "supported by substantial evidence and based on proper legal standards." *Winschel*, 631 F.3d at 1178 (quoting *Crawford*, 363 F.3d at 1158). As previously explained, Williams has failed to show that the Commissioner's decision is not supported by substantial evidence and based on proper legal standards. *See supra* Sections IV.A, IV.B. Williams is therefore not entitled to a default judgment.

## V. CONCLUSION

Plaintiff Bulinka Williams has failed to show that the Commissioner's decision is not supported by substantial evidence. First, the ALJ did not improperly discredit the medical opinions of Drs. Jordan and Hinton in determining her RFC. Second, the ALJ's failure to consider Williams's loss of insurance and inability to pursue follow-up medical treatment does not constitute reversable error. Third, Williams is not entitled to a default judgment against the Commissioner. The Court therefore AFFIRMS the Commissioner's decision. The Court will enter a final judgment by separate order.

DONE this 19th day of February, 2021.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE